Today is 517-0114, People v. Milton-Lattimore May it please the Court, Counsel. My name is Elizabeth Crotty, and I represent Milton-Lattimore, Jr. in this matter. Subject to this Court's questions, I'd like to focus my time today on the fitness issues raised in the first arguments of the briefing. These relate to Milton's ongoing struggles with fitness and the deficiencies below in ensuring that Milton was and remained sufficiently fit to understand the proceedings, participate in his own defense, and to knowingly, intelligently, and voluntarily plead guilty. The issue has three parts. First, the restoration hearing was both procedurally deficient and the result of that hearing was unreliable. Second, the record documents intervening events between the restoration hearing and the guilty plea hearing that raised new bona fide doubts about Milton's fitness that were never addressed by the trial court or counsel. Third, the trial court ordered special provisions as recommended by Dr. Cuneo, and yet none of these proceedings were those special provisions utilized and adhered to. This error, particularly in the guilty plea, rendered that proceeding also unreliable and makes it impossible to determine on the record that the plea was knowing, intelligent, and voluntary. Therefore, we ask that this Court vacate Milton's guilty plea and revand for new proceedings beginning with a fitness assessment and hearing. The fact that these are issues of constitutional magnitude cannot be overstated. It was not in the trial court, nor is it now, Milton's burden to prove that he is unfit. What about this issue of forfeiture, though, that the State raises that some of these issues were not raised below? Again, it's not Milton's burden to raise the issue of his own fitness. So this Court can reach it either through trial court error or through the assessment of counsel's conduct, but it can't hold Milton responsible for not asserting his own mental deficiencies, explaining the nature of his mental health impairments, and asserting his rights to understand something that he does not understand. So is your client now claiming that under this restoration hearing he should not have been found fit? Correct. Did he offer an expert that said he was unfit? There were two experts. One was Dr. Cuneo. One was Dr. Cuneo, and then there was the DHS expert. No one testified at the hearing at all. We have reports being submitted. Is that Raven? He had evaluated him earlier. I don't see a particular re-fitness assessment. There's Dr. Vallabhaneni from the... Right, so there's the DHS doctor. I am taking my best guess. The issue I would point this Court to is illustrative. You have Milton functioning within the DHS system. They're not looking at how he functions in the court system because they are not there. You have him sent to an evaluation with Dr. Cuneo. He is able in that setting to answer the right questions. Dr. Cuneo, everybody on this bench understands that he's been in the system for a long time. He understands what is needed in a court setting. There is a difference. Why he does those extra things. First, I will note that this is not dispositive of the case. Just to put that aside. That's why I asked this first. Secondly, there are two things I think that are critical to understanding this. One is that Dr. Cuneo's opinion was not that Milton's fit. It was that with these special provisions, Milton can understand the proceedings and function within the court system. Is that not fit? That is fit with special conditions. But then we get to the restoration hearing and we have leading questions. We have yes or no answers. Those are contrary to Dr. Cuneo's opinion of what should occur in proceedings involving Milton Lattimore. Further, so we don't know if those provisions aren't. And these aren't just Dr. Cuneo's opinions. These were adopted by the court. And yet the court itself did not follow those rules about how to interact with Milton. The second thing is, and I think this example is brought up in both the opening and the reply brief because I think it speaks directly to the point. Milton was asked, who's Mr. Piper? Milton says, I don't know. He's never told me who he was. Mr. Piper is the state's attorney who has appeared at two previous hearings. You were functioning within an adversarial system. The state has, at that specific hearing, referred to Mr. Piper and defense counsel as the parties. You have two opposing attorneys. Only other one is Milton's attorney. And he's asked who's Mr. Piper and he doesn't know. That could have been an honest answer. I'm sure it was honest. I'm 100% sure that it was honest. But he doesn't know that that's the state's attorney. That's the person that's against him. So, yes, he's able to answer back the prosecutors against me. But to not know who in that room is the prosecutor, that doesn't, I mean, how can we say that that is true understanding of the proceedings? Well, I've stepped through several felony matters where looking at a defendant and look over the state's attorney and not know who that person is or what they're doing. This is someone who has been in prior proceedings and has been introduced in prior proceedings as the state's attorney. It's also in an active setting, you know, you have them sitting in designated roles. It also speaks to the fact that this is a defendant who requires special conditions and his attorney hasn't pointed out to him. You have two options based on the facts. His attorney hasn't pointed out to him who the prosecutor is, so he knows not to talk to them. Or his attorney has done that and he hasn't retained that information. Okay. But let's remember that this is Milton at his best. At his best, he functions at the intellectual level of a 9- or 10-year-old. He is in the bottom 1 to 2 percent of the population, depending on whether you ask the appointed expert, Dr. Cuno, or the state's second requested expert, Dr. Rabun. 1 to 2 percent. He also has attention deficit hyperactivity disorder, which on its own does not render someone unfit. None of these conditions on their own would be self-evident. But this does affect his self-regulation, his attention, his concentration. He has lifelong problems with psychosis that we know requires medication to be controlled for him to stop having suicidal ideation and active attempts, for him to not hallucinate, for him to be oriented to time. He has to remain on these medications. The subsequent evaluations, which include review from Dr. Cuno of the records, we know that at some point that medication was stopped or changed. We don't have any evidence that it was restarted, that the proper medication was restarted, that Milton was actually stabilized on those medications again. And we have someone who is not able to express themselves well because of the combination of his impairments, which exist all inside one person. Could you address for me the plea of guilty, what you think went wrong there? Because that's clearly an issue that we're going to have to, or maybe I'm wrong about that, but find ineffective assistance accounts for failing to object. Well, certainly, I don't think that this court has to determine definitively this was the court's error, this was trial counsel's error. There is enough error to go around, unfortunately, because, and I'll grant that these were different judges, but the court order on fitness stands until there has been a subsequent finding. And that's why I'd like you to address this issue, because the court order on fitness didn't say that special, I'll call them needs. Right. The defendant had special needs that needed to be addressed. Yes. And those were not addressed at the plea. Correct. They were deficient at the restoration hearing itself. They were completely absent at the plea hearing. So you have admonishments taking place in paragraph form, using statutory language, with yes or no questions. In the ordinary fitness hearing, I mean, in the ordinary guilty plea hearing, that's great. We'd love to see that in every great guilty plea hearing. In this proceeding, that's not enough to ensure that Milton knows what's going on. So we have paragraph form of the 402 admonishments, we have questions, and oftentimes you'll see the actual question that is asked to Milton is, do you understand what's going on? Now, it's important to know that he's easily led, he's suggestible, and he's deferential to authority. Those all would lead him to want to seem like he understands what's going on. And we don't have him being asked to explain back to the court or to counsel his understanding of the plea, his understanding of the plea terms, his understanding of the proceedings at all. Okay. Any last statements? Simply that the totality of the new bona fide doubts of fitness and the failure to follow the trial court's order that is completely supported by every single evaluation of Milton Lattimore and his treatment records at DHS, that does not confirm for this court, and the court should have no confidence that this plea was knowing, intelligent, and voluntary, or that he was fit to plead guilty at that time. And therefore, we ask the court to vacate the guilty plea and remand for additional proceedings. Thank you. Thank you. You'll have some rebuttal time. Ms. Camden. May it please the Court? Counsel? Jennifer Camden on behalf of the people. At the fitness restoration hearing, there is a corporature issue, because the defendant at that hearing did not even argue that he remained unfit. Now, the standard of review has alternatively been stated as whether the court abused its discussion or whether its ruling was against the manifest way of the error. But here, the defendant can't satisfy either standard. The court accepted stipulations that the doctors who evaluated the defendant would testify consistently with their reports, and the court personally observed and examined him, and the court does not err in finding that a defendant is fit, even with special provisions, based on that evidence. Now, the defendant notes that he didn't recognize Piper. However, defense counsel then asked the defendant the role of the prosecutor, and the defendant knew that that was his adversary. Further, the party stipulated to Dr. Cuneo's report, and in that report, Cuneo affirmed that the defendant knew that the role of the state's attorney was to convict him. And the state's brief discusses the other dates of the defendant's contact with Piper. What about the special needs in the court order that was entered in the fitness and its relationship to the plea? Well, Your Honor, I'd note that the defendant at the plea did not argue, never raised those issues, never argued that those special provisions hadn't been met, didn't assert that he was unfit, didn't assert that he was unmedicated, and didn't assert that the admonitions were given in a manner that he was unable to comprehend. And that's why the people … Isn't that why we have to look at your argument on ineffective assistance counsel? Right. Yes. So, Your Honor, the defendant is arguing that counsel was ineffective for failing to argue that a bona fide doubt of fitness existed based on either the defendant's medication status or based on the form of the admonitions given by the court. And how do you respond to that? Well, Your Honor, on the issue of the medication, the defendant at the plea hearing told the court that he was then taking medication. And the record does not prove that he was unmedicated at the plea hearing. Now, in order to prove ineffective assistance, the defendant must prove that facts existed at the time of trial, or in this case, the plea, that would have raised a bona fide doubt of fitness and that a court would have found that bona fide doubt at an ordinary hearing if it was surprised at that evidence. And the people further argue that the defendant has to show that after a hearing there's a reasonable probability that the court would have found him unfit. After all, that's how the defendant would show prejudice, by showing that the result of the proceeding. So what you're arguing, though, is that ineffective assistance to counsel relates to unfitness at the plea hearing. I thought that that was what the defendant was. Well, but Ms. Crowley, at the very end of her argument, said that the plea was not knowing and voluntary. Is that an issue in this case, or has it not been raised? Because fitness and knowing and voluntary may not be the same Right. Well, Your Honor, I think we are disagreeing a bit, defendant and I, because in the answer brief I thought that the defendant was merely speculating about the court's admonitions about his constitutional rights, and then in the reply brief he came back and said that he was arguing that he didn't understand the plea, meaning the admonitions itself. My response is that the defendant never said that he didn't understand his rights. He said that he didn't understand the sentencing range or truth in sentencing provisions. I'm not answering your question. Oh, that's okay. I'm winding you up. I understood the defendant's argument to be that counsel was ineffective or failing to raise these issues. Right, but these issues include more than I wasn't fit at the time. It might also be that maybe you'll find that I was fit, but you can't find possibly because I didn't have the special needs issues that it was knowing and voluntary, because that's what Cuneo was saying, you know, you have to have these for him. So I'm wondering what the State's response to that issue is. Right. Well, on that issue, I would note that at the motion to withdraw a plea, the defendant never argued that he didn't understand the court's admonitions, and that is the basis of the defendant's claim that the plea proceedings didn't comport with these special provisions, that the words were not understood by the defendant. I note that the defendant never testified and never alleged that he didn't understand those words. And the State's argument is that this court shouldn't consider, as a matter of first impression, based on a silent record, when the defendant never stated that he didn't understand these words, that the defendant didn't understand these words. In fact, the defendant, in this case, repeatedly addressed the court himself fluently in that light and never once complained that he didn't understand his rights. The court didn't rule on that issue. And so to the extent that the defendant is raising some kind of forfeited claim, the defendant can't show that the court abused its discretion in denying the motion to withdraw based on that forfeited issue. I'd also note that the defendant's claim was that, or had been in the court below, that he didn't understand the sentencing provisions of the plea. And in that context,  and testified that he always followed the special provisions in communicating with the defendant, repeatedly explained the terms of the deal, discussed with the defendant all of the pros and cons of going to trial. And so I'd say that any doubt about whether those conversations include discussions of the rights that he would be waiving should be resolved against him on this silent record. So with regard to the medication issue, the defendant, again, said at the plea that he was taking medication. And it's true that he later walked that back in an unsworn statement and said that he was not. But two days after the plea hearing, the hearing at which he told the court that he was medicated, he gave an interview to the probation officer for the pre-sentence investigation report and told the officer that he was then under the care of the jail psychiatrist and taking medication for mental health issues. And the officer then confirmed with the jail infirmary that the defendant was taking medication for a psychotic disorder. So the defendant has the burden here of showing that there were facts that existed at the time of the plea that would have raised the bona fide doubt of fitness. That's the basis for his argument that counsel was ineffective for not raising that claim. Now, in addition to the fact that counsel was communicating with the defendant prior to the plea and according to his own testimony was able to communicate with him and the defendant was able to satisfactorily repeat back what he was saying in his own words, the defense counsel never raised this medication issue. And the record seems to indicate that the defendant was medicated at the time. Now, the defendant argues that it's not enough that he need not show that he was truly unmedicated at the time of the plea, that it's enough that he raise a question regarding this issue. And he argues that he did raise a question because the defendant at one point claimed not to have taken his medication on the day of the plea even though on the day of the plea he said that he had. But the people's response to that is that it's the defendant's burden to show that facts actually existed that would have raised the bona fide doubt, not just that speculation existed. Speculation does not prove ineffective assistance of counsel. So that's the nutshell of the State's arguments with regard to the plea hearing regarding to the admonitions and the medication issue, the fitness restoration issue. And I'd be happy to answer any questions that the court might have on any of the other issues raised in the defendant's brief. Well, and I understand there's a lot going on with this case to try to argue in 10 minutes. So there's a lot going on. So I'm probably going to run you over. But I want you to address if this case were to go back to the trial court, the State's arguing that there should be a retrospective fitness hearing. The defense is saying there should be. And I'd like you to take a shorter time and address that issue for me. Of course, Your Honor. The appellate court has stated that retrospective fitness hearings are now the norm and that the appellate court will order one instead of presuming that evidence of the defendant's mental state cannot be recreated. At that hearing, a court would consider whether evidence about the fitness at the time could be assessed. And if that evidence can be assessed and if that evidence shows fitness at the time, then the conviction would stand. And if it can't or if it suggests unfitness, then the court would vacate the conviction. And the State argues in the answer brief that in this case, a retrospective fitness hearing would be the proper remedy if the court were to find that error occurred. Of course, some people argue that it did not. The defendant is speculating that it might be impossible to assess fitness as of October 2013, but the parties should have the chance to try to prove that, particularly given that in this case, a large part of the defendant's argument seems to be based on raising questions about the factual issue of whether he did or did not take a particular medication on a particular day. I would assume those could be found in medical records. I would presume so as well. And so I think that this – that that's why this case would be a good candidate for a retrospective fitness hearing if one were – if an issue was raised. But I, again, strenuously argue that the defendant has not proven that error occurred with regard to fitness and that the defendant hasn't shown that the court abused its discretion in denying his motion to withdraw plea. I just wanted to make sure you had the opportunity to hit that issue. I appreciate that, Your Honor. Thank you. I'm sorry, I'm overstepping my bounds. No, you're not. Thank goodness. No, that's all the questions I had. I didn't know. Thank you. Anything else to conclude? No, no, thank you. All right. Thank you so much, Ms. Campbell. Ms. Crotty. Thank you. Your Honor, so much of what – I'm going to interrupt you right at the start. Sure. I'm going to start where Justice Sotomayor ended. So do you believe that if error is determined – I'm not sure what that error is, which is my question. Okay, go ahead then. Oh, okay. So first – I just want to know what error are we talking about in order to get a retrospective resolution. So much of this is addressed in the response brief, so I'm going to try to not just reiterate myself in the reply brief. So I don't want to simply repeat what I've stated earlier, but there are a few things that I'd like to point out. In the opening brief, part of the argument was – and I'll read the argument heading just to be clear – this Court should vacate Milton's guilty plea and remand for additional proceedings because the record does not confirm that he knowingly, intelligently, and voluntarily pled guilty. Now, important in understanding all of these issues is that Milton's fitness is not something he has to prove or disprove. When there has been a finding or showing by factual records that there is a bona fide doubt about a person's fitness – now, in the first instance, the State agreed below. He doesn't know which way the sun rises. He doesn't know what day or time it is. He thinks it's seventh week. That was his only response. There was no doubt that Milton was fit – unfit. So the level of fitness – the burden then shifts to the State to prove that he was indeed fit. That remains true whether or not Milton says to the Court, I'm fit, I'm fit, I'm fit, which is what he was saying to the DHS investigators. We don't doubt that. But that does not constitute forfeiture or waiver of a fitness issue. That's a constitutional issue of plain error that cannot be waived. Now, his failure to assert that he did not understand the guilty plea accomplishments when the trial court did not comply with his known limitations at his best functioning – the burden is not on him for that as well. Now, the State would have you rely on representation of counsel. But that can't be trusted in this case because we have a specific order that is fully supported by the medical evidence that at Milton's best functioning, you have to follow these special procedures to ensure that he knows what's going on, to ensure that he can assist in his own defense. His defense counsel, who is supposed to be his advocate, did not insist that the trial court at the restoration follow those hearing – those procedures, did not insist that the trial court follow those guidelines at the guilty plea hearing. And I'm going to stop you there, counsel. Yes. Because part of the special provisions were these checks to make sure his fitness continued. Right. I haven't dealt completely in the record, but I believe there were several court appearances between the time the restoration hearing took place and the plea was, I think, right at two years, if I'm remembering the time. There were several times that the defendant was in court with his attorney, where the attorney obviously had the chance to speak with him. The court had the ability to observe and to monitor and see how he acted and if he spoke. And I'm sure if there was a continuance of the trial, the court had to ask him if he understood the waiving of the speedy trial and things such as that. So the court had the opportunity through that two years to observe and see and check on his status, not to mention the fact that I think, as you stated a little while ago, his attorney had a duty if he believed that the fitness issue had come back up again, that he was not looking for medication, to bring that to the attention of the court to address it. Correct? And that duty we know is not complied with because we have evidence that the medications were stopped, that he had a return of certain psychotic symptoms, and no one said, let's make sure he gets an evaluation. And I don't mean to cut you off, but soon after that, that was brought in the record. The medications were started again, I believe is in the record. It is not clear. What we have, what the state would have you believe is evidence that the proper medication regimen was started again are two things. Milton's yes or no response, which we know is not trustworthy, unfortunately, to this Ed. Management question, are you medicated? Are you medicated for what? Are you medicated for your psychotic symptoms? Is that medication effective? That question does not answer that. The other is his responses to the probation employee in the PSI. We don't know the format of questioning, and we don't know the issue there. I have one more question. There's a lot going on here for a short period of time. One thing that no one has addressed is this procedural safeguard for mentally disabled adults and descendants. I assume you're not abandoning that argument, but it all flows from the argument that you're making about his fitness. Right, and we have Milton who is, and I think this speaks to the Ed. We have an order for special provisions. That carries forth to future proceedings, and those should have been used at the guilty plea hearing, or we wouldn't be here. We would know because Milton would have explained back in his own words the terms of the plea, the rights he was waiving, what actual medications he thought he was on, those sorts of things. So those protections are supposed to be put in place for this very reason. And that is the same reason that we ask for, you know, ordinarily, yes, retrospective fitness hearing, go nuts. If you can figure out what the medication regimen was, if you can look and see whether there's discussion of symptomatology in the jail records, which, you know, there may be other issues there that preclude the reliability, that's not even our issue. Our issue is that we know that Milton's best functioning, as determined by Dr. Cuneo and as found by the trial court, you have to use these special provisions in order to ensure that he understands that. Where that didn't happen, we can't, we can go recreate his medication regimen. We can go look for symptomatology. What we can't do is gauge if he was functioning better at this guilty plea hearing such that he knew what his rights were, he knew what he was pleading guilty to, and so forth. His comments after that that say, I didn't understand, I thought my mom told me to plead guilty, I want my motion, which is, I believe, what the State's referring to as eloquent discussion, that rebutts, you know, that is not something that is a standalone. He's saying there's problems with medication. Dr. Cuneo, who's read his jail records, is saying there's problems with his medication. If these aren't restarted, you're going to be back in the situation you were in before. So it's not, we're not asking you to rely solely on Milton's word for this. And certainly, you know, if this court sees a retrospective fitness hearing as an appropriate remedy, that would be a step in the right direction. That being said, recreating six years later after two former appeals and several court appearances, whether Milton really did understand who the prosecutor was and really did understand his rights, seems like an exercise in futility. Okay. Thank you. Thank you very much. Okay, that completes the docket oral arguments for today. This forum will be in the recess.